LAW OFFICES OF VICKI I. SARMIENTO
A Professional Corporation
VICKI I. SARMIENTO, SBN 134047
333 North Garfield Avenue
Alhambra, California 91801
Telephone: (626) 308-1171
Facsimile : (626) 308-1101

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile:  (818) 347-4118

*Attorney for Plaintiffs L.M and Carol Adams and S.M.B*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| L.M. by and through her Guardian Ad Litem ASHELY MCCAIN, individually and as successor in interest to the Estate of STEVEN MOTLEY; CAROL ADAMS, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF REDDING, CHIEF ROBERT F. PAOLETTI, OFFICER JARED HEBERT, OFFICER WES TOWNSLEY, OFFICER BRANDON LARGENT, OFFICER BECKY ZUFALL, CORPORAL CHRIS JACOBY; and DOES 1-10, inclusive, <br><br> Defendants. | Lead Case No.: 2:14 CV-00767 MCE-AC <br><br> (Consolidated Case No.: 2:14 CV-01736-TLN-CMK) <br><br> **PLAINTIFFS' SEPARATE STATEMENT IN RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS, AND ADDITIONAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| S.M.B., a minor, by and through his Guardian Ad Litem DAWN BIANCO, individually and as successor in interest to the estate of STEVEN MOTLEY, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF REDDING, a municipal corporation; ROBERT F. PAOLETTI, JARED HEBERT, | |

1

PLAINTIFFS' SEPARATE STATEMENT IN RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND ADDITIONAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WES TOWNSLEY, BRANDON LARGENT, BECKY ZUFALL, CHRIS JACOBY; and DOES 1 to 25, inclusive,

Defendants.

Plaintiffs L.M., CAROL ADAMS, and S.M.B. hereby submit their "Response to Defendants' Separate Statement of Uncontroverted Facts and Additional Facts in Support of Plaintiffs' Opposition to Motion for Summary Judgment."

## PLAINTIFFS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| 1. On October 5, 2013, following a high speed chase of first, a stolen GMC truck, and then a stolen Redding Police Department patrol car, plaintiff Stephen Motley was involved in a violent confrontation with City of Redding Police Officers.<br><br>Supporting Evidence: Exh. A(1) 6:17-11:14; Exh. A(2) 32:4-41:1; 99:8-24; Exh. A(3) 18:1-24:2; Exh. A(5) 13:11-17:23; 21:6-9. | Undisputed. |
| 2. In the course of attempting to detain Motley, who resisted violently, | Disputed that Mr. Motley "resisted violently," or that he "continued to |

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| Redding police officers struck him several times with batons, employed pain compliance holds, and at one point utilized a carotid restraint; despite all of which, Motley continued to strenuously resist the officers attempting to place him in handcuffs.<br><br>Supporting Evidence: Exh. A(2) 22:13-23:4; 32:4-41:1; 99:8-24; Exh. A(3) 16:9-24:2; 26:22-27:15; 41:11-42:12; Exh. A(4) 12:7-13:4; 14:6-15:22; 19:19-23:2; A(6) 9:21-11:18. | strenuously resist the officers attempting to place him in handcuffs."<br><br>Disputed as to whether a carotid restraint was used as opposed to a chokehold.<br><br>Supporting Evidence: (Decl. of Roger Clark, paras. 9); (Decl. Vicki I. Sarmiento, Exhibit "A" – Depo. Townsley 25:1-15; Exhibit "B" Depo. Jacoby 13:4-15; Exhibit "D" – Depo. Zufall 10:24 - 11:13; Exhibit "E" - Depo. Porter 16:10-19).<br><br>Officer Townsley then got on top of Mr. Motley's back and started pain compliance techniques, then started punching him in the jaw with both hands on both sides of his jaw to render him unconscious. Mr. Motley was described as stunned and at this point Townsley put him in a carotid restraint causing Mr. Motley to go unconscious. Officer Townsley took out his handcuffs, but before he could put them |

3

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| | on, the other officers arrived and started beating Mr. Motley with batons. Before the other officers arrived, Officer Townsley had Mr. Motley subdued. According to civilian witnesses, he was just laying there moaning in pain. According to Officer Townsley, the situation was under control and Mr. Motley was not resisting; Townsley was on top of Mr. Motley's back, he had him contained with just one hand, telling him calmly "stop resisting me," and he was calling for backup. (Decl. Roger Clark para. 11). |
| | Townsley used his whole body weight to keep Mr. Motley's upper body controlled. To keep Mr. Motley in that prone restraint position, officer Townsley kept his torso on top of Mr. Motley's back and "stayed heavy on him," a martial arts term. |
| | According to civilian witness statements, when the four officers arrived on the scene after **Townsley** |

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| | **already had Mr. Motley subdued,** they were running to the scene, yelling "get him, get him" with their batons raised, and then started violently striking Mr. Motley about his arms, ribs, legs, head, and body. (Decl. Roger Clark para. 12)<br><br>Supporting evidence: Decl. Vicki Sarmiento, Exh. "A" Townsley Depo: 19:1 – 20:8; 43:1 – 44:1; 52:13 – 53:6; 53:25 – 54:2-3, 18-24; 55: 7-21; 66:1-16; 77:19-25; 105:8-17; Exh. "C" – Depo. Largent 53:1-16; Exh. "E" Depo. Porter 14:9-19; 15:1-4; 21:3-21; 25:15 – 26:5; 30:3-8<br><br>Undisputed as to the other matters stated. |
| 3. After Motley was finally handcuffed, he exhibited signs of medical distress.<br><br>Supporting Evidence: Exh. A(3) 43:15-45:14;71:11-73:22; 74:5-80:10; 85:23-86:17. | Disputed.<br>After Mr. Motley was finally handcuffed behind his back and laying on his stomach, the four officers continued to beat him with their batons, continued to apply full body weight compression restraint, continued to |

5

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| | apply restraint holds such as crossing his legs, bending them back against his buttocks, and applying their body weight. Specifically, after he was handcuffed, officer Zufall applied restraint holds such as crossing his legs, bending them back against his buttocks, and applying her body weight. Officer Chris Smyrnos arrived after the handcuffs were applied and saw officer Townsley in the front of the house. Smyrnos went to the backyard and found Mr. Motley "detained in handcuffs." Officer Zufall was detaining Mr. Motley's feet. Smyrnos took over from Officer Zufall and continued to apply leg hold. He placed Mr. Motley in a figure-four on his legs, bending one foot behind his knee, and then folding the leg up and pressing his weight against the leg. |
| | Supporting Evidence: Decl. of Vicki I. Sarmiento, Exh. "B" – Depo. Jacoby 27:17 – 28:7; 29:5-23; 30:1- 31:25; 50:1-21; Exh. "C" – Depo. Largent |

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| | 61:11-16; 62:18-25; 62:21 – 63:23; 63:1-25; 66:1 – 67:13; 68:2-23; 69:1 – 70:2; Exh. "D" – Depo. Zufall 19:19 – 20:18; 21:3 – 22:14; 29:19 – 30:9; Exh. "G" – Autopsy Report. |
| 4. Officer Brandon Largent administered CPR until EMT personnel, who had been summoned to the scene Code 3 by Redding police officers, arrived and transported Motley to Mercy Medical Center.<br><br>Supporting Evidence: Exh. A(3) 33:7-34:2; 43:15-45:14; 71:11-73:22; 74:5-82:5; 85:23-86:17; A(6) 26:19-27:16; 34:9-13. | Undisputed. |
| 5. Stephen Motley died at the hospital on October 8, 2013.<br><br>Supporting Evidence:  Complaint, 6:17. | Undisputed. |

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| 6. Following an autopsy, forensic pathologist Arnold Josselson, M.D. concluded that Motley died of cardiopulmonary arrest that was likely attributable to excited delirium.<br><br>Supporting Evidence: Exh. A(7) 14:8-15:10. | Disputed that Motley died of cardiopulmonary arrest attributable to excited delirium.<br><br>Mr. Motley did not die of "excited delirium" aka excited delirium syndrome ("EDS"). Mr. Motley lacked most of the traits described in cases of EDS. He did not exhibit symptoms of delirium before he was restrained and he did not talk as if he was delirious after he was restrained according to police reports. He was not hyperthermic according to medical records. He did not have a primary cardiac arrest by history.<br>**Mr. Motley died from restraint asphyxia with compression.** The asphyxia caused loss of consciousness, hypoxic brain damage and cardiac arrest. The ultimately fatal asphyxia occurred during a struggle and prone (chest down) restraint procedures with the Redding police officers. Mr. Motley was restrained prone in several ways with enough pressure to |

PLAINTIFFS' SEPARATE STATEMENT IN RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND ADDITIONAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| | cause death from compressive asphyxia. This included chest compression by body weight and chest compression by figure 4 leg holds. This also included Mr. Motley's face being compressed into the dirt during prone restraint. After Mr. Motley lost consciousness, Officer Largent testified that he did feel a neck pulse. Feeling a pulse in the neck indicates Mr. Motley's heart was still beating after he lost consciousness. It supports the evidence that Mr. Motley was asphyxiated rather than having a primary cardiac arrest event.<br><br>From the time Mr. Motley was handcuffed until officer Jacoby radioed that Mr. Motley was unresponsive, 7 minutes and 40 seconds had elapsed. (Decl. of Clark para. 14)<br><br>Supporting Evidence: Decl. O'Halloran, paras. 5, 6, 12; Decl. of Vicki Sarmiento, Exh. "C" – Depo. Largent 57:22 – 58:10; 61:11-16; 62:21 – 63:13; 63:14 – 25; 64:1-4; 65:12-18; |

9

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| | 66:1-18; 67:11-13; 67:21-25; 68:1-23; 69:3-23; 69:21 – 70:2; 75:2-13; 77:21 – 78:15; 79:12: - 80:10; Exh. "E" – Depo. Porter 7:10-24; 11:15-17; 11:18 – 12:8; Exh. "F" – Stephany E. Fiore M.D. Report, p. 4 |
| 7. Motley had levels of methamphetamine in his blood in the low range of toxicity, and multiple injuries, including a broken wrist, broken leg, several broken ribs, bruising on his back, and contusions to his head consistent with blunt force trauma.<br><br>Supporting Evidence: Exh. A(7) 30:15-37:22. | Undisputed. |
| 8. In keeping with state law as well as best practices and standards for law enforcement agencies in California, the City of Redding has adopted a "critical incident" protocol which is in force between the City, Shasta County and other law enforcement | Undisputed. |

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| agencies in the Redding area.<br><br>Supporting Evidence: Exh. B 6:16-7:1. | |
| 9. A critical incident protocol provides that law enforcement agencies other than the agency that employed the officers implicated in an incident involving the death of a person will take the lead in the subsequent investigation.<br><br>Supporting Evidence: Exh. B 6:23-27. | Undisputed. |
| 10. In the case of Mr. Motley's death, the lead investigating agency was the Shasta County Sheriff's Office.<br><br>Supporting Evidence: Exh. B 7:1-7. | Undisputed. |
| 11. Consistent with the critical incident protocol, the Redding Police Department provided investigative services as requested by and | Undisputed. |

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| necessary to the Sheriff's investigation, including compelled interviews of the officers involved and facilitation in obtaining answers to written questions by the Shasta County District Attorney's Office, which conducted its own review of the incident pursuant to the protocol.<br><br>Supporting Evidence: Exh. B 7:9-14 | |
| 12. As an aspect of its own investigation pursuant to the critical incident protocol, the District Attorney's Office issued "findings" that raised questions about the use of force by officers who used baton strikes in an effort to subdue Motley, but concluded that, given the chaotic circumstances confronting the officers, there was no basis to second-guess the officers' use of force, and the DA declined to file charges against any Redding Police Officer involved in Motley's apprehension. | Undisputed that these were the findings of the D.A.'s office. |

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| Supporting Evidence: Exh. B 7:15-7:21. | |
| 13. Each of the defendant officers passed a POST certified police academy prior to beginning their career as police officers.<br><br>Supporting Evidence: Exh. B 4:22-25. | Undisputed. |
| 14. Each defendant officer also went through a field-training program at the department where they began their police careers and, as to those officers who came to Redding from other departments, the training records of those officers shows that they satisfactorily completed lateral field training at the City of Redding.<br><br>Supporting Evidence: Exh. B 4:25-5:9. | Undisputed. |
| 15. The City of Redding provides training to its officers in all aspects of law enforcement that meets or | Disputed. |

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| exceeds POST standards, including use of force, response to critical incident circumstances and the provision of reasonable and necessary medical care.<br><br>Supporting Evidence: Exh. B 5:10-6:3. | The City of Redding failed in their training of their officers. The use of force on Mr. Motley and the manner in which he was restrained and beaten by five defendant officers shows inadequate training. It would have been obvious to any reasonably trained officer that multiple baton strikes and restraint by application of body weight by five officers on a single subject who is in a prone position without access to weapons was excessive and unreasonable. The fact that five defendant officers all participated in this conduct, without any of them refraining or intervening, demonstrates the inadequacy of the police department's training. (Decl. of Roger Clark, para. 13).<br>The officers improperly restrained Mr. Motley by keeping him prone with body weight applied, and by holding his legs back towards his buttocks thereby interfering with his ability to breath. (Decl. of Roger Clark, para. 14); See Plt. Additional Facts Nos. 3, 4 below.) |

14

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| | The officers violated POST standards and police officer training with respect to restraint and positional asphyxia. (Decl. of Roger Clark, para. 15; See Plt. Additional Facts Nos. 3, 4 below). There was no retraining or adequate discipline of the police officers involved in this incident which is indicative of ratification of what occurred. (Decl. of Roger Clark, para.16). |
| 16. The individual defendant officers involved in the altercation with Motley received training that met or exceeded POST standards, sometimes by significant amounts, in all aspects of law enforcement, including the use of force, positional asphyxia, as well as other law enforcement domains.<br><br>Supporting Evidence: Exh. B 5:10-6:3. *see also* Exh. A(2) 9:17-18; 12:11-13:3; 92:22-94:1; A(3) 70:9-19; 100:5-101:14; 106:7-109:18; A(4) 6:14-7:2; 47:22-50:4; A(6) 7:20-8:24. | Disputed.<br><br>Officers are trained that any use of force on an individual's neck is significant and can result in death. Officer Townsley testified he applied "carotid restraint" on Mr. Motley. (Decl. of Roger Clark, para. 17). A proper use of the carotid restraint would have rendered Mr. Motley unconscious within seconds and would have precluded any further use of force because he would have been unconscious and totally unable to resist |

15

PLAINTIFFS' SEPARATE STATEMENT IN RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND ADDITIONAL FACTS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| | the application of handcuffs. (Decl. of Roger Clark, para. 18). If Mr. Motley continued to struggle, as alleged by the officers, then Mr. Townsley applied a chokehold (and not a carotid restraint hold) which restricts the flow of air into the lungs and caused Mr. Motley to struggle to breathe. (Decl. of Roger Clark, para. 19). Properly trained officers learn how improper restraining techniques can block the flow of air into the individual's lungs contributing to a life-threatening condition known as positional (or restraint) asphyxia. Proper training also covers the multiple effective options available such as avoiding compression of the chest, rolling the subject over on his side, sitting or standing the subject up, proper hobbling methods (which excludes hogtying), sitting the subject in the police unit. Properly trained officers know that breathing requires two actions: increasing the size of the chest by expanding the ribs, and contracting |

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| | the diaphragm, allowing air to fill the lungs. When a person is lying face down, performing both of these functions can be more difficult. An officer kneeling or lying on the individual's back, aggravates the situation because the additional weight of the officer must be lifted along with the weight of the person's body. The greater the weight or more intense the compression, the harder it becomes to breathe. As a result the suspect struggles more violently. (Decl. of Roger Clark, para. 22).<br><br>Officers are taught that they must assume that any person being restrained presents a risk of sudden and unexpected death. Officers are trained that they must act quickly to return the subject to an upright position. The risk that restraint asphyxia and accidental death will occur is only controlled by using proper restraining techniques. (Decl. of Roger Clark, para. 23). |

| DEFENDANTS' FACTS | PLAINTIFFS' RESPONSE AND DISPUTED FACTS |
|---|---|
| | The officers improperly restrained Mr. Motley by keeping him prone with body weight applied, and by holding his legs back toward his buttocks thereby interfering with his ability to breathe. (Decl. of Roger Clark, para. 25). After Mr. Motley was handcuffed, he should have been brought to a seated position or at least placed on his side. (Decl. of Roger Clark, para. 26). The police officers violated POST standards and police officer training with respect to restraint and positional asphyxia. (Decl. of Roger Clark, para. 27). |
| 17. Following this incident, the City of Redding conducted additional training of its police officers in techniques for dealing with suspects exhibiting signs of "excited delirium." <br><br> Supporting Evidence: Exh. A(2) 89:17-92:10. | Undisputed. |

# ADDITIONAL FACTS IN SUPPORT OF OPPOSITION TO MSJ

| PLAINTIFFS' ADDITIONAL FACTS | |
|---|---|
| 18. Mr. Motley stopped resisting before the handcuffs were put on him, and at that point of "zero" resistance, the handcuffs were put on him by officer Townsley and another officer. After the handcuffs were put on, Mr. Motley was "not fighting anymore." Officer Townsley got up and walked away after the handcuffs were on.<br><br>Supporting Evidence: Decl. of Vicki Sarmiento, Exh. "A" -Townsley Depo: 18:20-25; 55:7-21; 65:7-12. | |
| 19. Officer Townsley noticed Mr. Motley had a broken arm when he grabbed it to bring behind his back to handcuff him while Mr. Motley was face down on the ground.<br><br>Supporting evidence: Decl. Vicki I. Sarmiento, Exh. "A" – Townsley Depo: 52:13 – 53:6). | |

19

| **PLAINTIFFS' ADDITIONAL FACTS** | |
|---|---|
| 20. Officer Townsley maintained Mr. Motley in a prone position by straddling his upper body and sitting on his waist area. Officer Townsley reported using his body weight to keep Mr. Motley in that position and using a left arm "under-hook" hold. Officer Townsley said at no point did he feel Mr. Motley was overpowering him because Townsley "was able to maintain a dominant position" and he was even able to make a radio call for back up from his position.<br><br>Supporting Evidence: Decl. of Vicki Sarmiento, Exh. "A" – Depo. Townsley 19:1 – 20:8; 43:1 – 44:1; 77:19-25; 105:8-17) | |
| 21. The baton strikes were so close to Townsley's head that he flinched and had to sit up on Mr. Motley's back so as not to get hit, but continued to hold him flat on the ground. | |

| PLAINTIFFS' ADDITIONAL FACTS | |
|---|---|
| Supporting Evidence:  Decl. of Vicki I. Sarmiento, Exh. "A" – Depo. Townsley 54:11-55:1 | |
| 22.  Four defendant officers, Jacoby, Porter, Zufall, and Largent continued to hit and subdue Mr. Motley even after he was handcuffed with his hands behind his back, on the ground on his stomach. Specifically, officer Zufall crossed his legs and sat on them with her full body weight as she bent them back towards his buttocks because she said Mr. Motley was still moving after the handcuffs were on.  Officer Smyrnos took over for Zufall and similarly employed a restraint on Mr. Motley crossing his legs and pushing them back towards Mr. Motley's buttocks.  Officer Smyrnos was performing this technique on Mr. Motley before officer Jacoby went to fetch hobble restraints, and when he returned, Smyrnos was still pushing the legs of Mr. Motley towards his buttocks. Officer Jacoby was trying to control Mr. Motley's upper body before the | |

| **PLAINTIFFS' ADDITIONAL FACTS** | |
|---|---|
| handcuffs went on, and once they were on, he claims Mr. Motley continued to struggle requiring them to continue to control his upper body.<br><br>Supporting Evidence:  Decl. of Vicki I. Sarmiento, Exh. "D" – Depo. Zufall 19:19 – 20:18; 21:3 – 22:14; 29:19 – 30:9; Exh. "B" – Depo. Jacoby 27:17 – 28:7;  29:5-23; 30:1- 31:25; 50:1-21 | |
| 23.  Had Mr. Motley not been restrained the way he was on the day of the incident, he would not have died three days later.  Though cardiac function and respiratory function were restored by medical assistance within an hour of the restraint episode, consciousness was never restored and permanent brain damage was diagnosed at the hospital. Anoxic brain injury caused death through a continuous chain of physiologic malfunctions initiated and caused by the police restraint.<br><br>Supporting Evidence:  Decl. of Ronald L. O'Halloran, M.D. paras. 13. | |

| **PLAINTIFFS' ADDITIONAL FACTS** | |
|---|---|
| 24.  Mr. Motley never threatened, assaulted, or attempted to assault any Redding police officer on October 5, 2013.<br><br>Supporting Evidence: Decl. Vicki I. Sarmiento, Exhibit "A" – Depo. Townsley 25:1-15; Exhibit "B" Depo. Jacoby 13:4-15; Exhibit "C" – Depo. Largent 26:-10-21; Exhibit "D"  Depo. Zufall 10:24 - 11:13; Exhibit "E" - Depo. Porter 16:10-19 | |
| 25.  Nothing at the scene justified using lethal force on Mr. Motley.<br><br>Supporting Evidence: Decl. of Vicki I. Sarmiento, Exh. "A" – Depo. Townsley 38:8-11; Exh. "D" – Depo. Zufall 35:7-10). | |
| 26.  Dr. Ronald O'Halloran concluded that Mr. Motley's blood concentration of methamphetamine was below the commonly seen levels in which deaths are attributed to direct methamphetamine | |

| PLAINTIFFS' ADDITIONAL FACTS | |
|---|---|
| cardio-toxic effects. And the fact that Mr. Motley had a pulse after he lost consciousness indicates something other than the cardiotoxic effect of methamphetamine caused loss of consciousness since the heart was still beating enough to cause a palpable pulse. The likely cause for the loss of consciousness was restraint asphyxia.<br><br>Supporting Evidence:  Decl. of Ronald L. O'Halloran M.D., para. 14; Decl. of Vicki I. Sarmiento, Exh. "F" – Stephany Fiore M.D. Report, p. 4, 6). | |
| 27.  The D.A.'s forensic pathologist, Dr. Stephany Fiore, opined that the scalp lacerations were consistent with the use of a linear object like a baton.  She noted that one of the blows caused the baton to shatter, and that the fractures to decedent's right forearm was consistent with a baton blow, or blows.  She stated "the large contusions on the backs of Mr. Motley's left thigh and calf were consistent with blows from a baton." | |

| **PLAINTIFFS' ADDITIONAL FACTS** | |
|---|---|
| The deep muscle injuries in his back and rib fractures could be from either blows with a baton or stomps or kicks with a heavy booted foot. Dr. Fiore further opined that the methamphetamine present in his system was at the lower end of toxic level, and had little to do with his cardiac arrest.<br><br>Supporting Evidence: Decl. of Vicki I. Sarmiento, Exh. "F" – Stephany Fiore M.D. Report | |
| 28. The City of Redding and Chief Paoletti ratified the conduct of the police officers by failing to discipline them. The City and Chief Paoletti accepted the inaccurate findings of Sheriff Coroner Arnold Josselson, M.D.<br><br>Specifically, "Manner of death" should have been "homicide," not an "accident" because the "homicide" classification for death certificate purposes is "death at the hands of other person(s)." It does not imply necessarily that the death was | |

| **PLAINTIFFS' ADDITIONAL FACTS** | |
|---|---|
| intentionally caused or that it was a criminal homicide. "How the injury occurred" on the death certificate should reflect how the injury that caused death happened. "Pursuit crash" has no place on a death certificate since law enforcement's own investigation indicates the crash preceding the police assault of Mr. Motley caused no injuries. The large scalp lacerations found on Mr. Motley after the assault would have bled copiously. No blood was found in the crashed pickup, nor in the police car Mr. Motley drove after the crash. No blood was observed on Mr. Motley when first seen by officer Townsley in the residence backyard, nor was blood seen on his hat found close to where he was restrained. "Resisted arrest" on the death certificate adds nothing to understanding how injuries Mr. Motley sustained happened.

"Cause of death" described as "cardiopulmonary arrest during violent struggle with police in an individual under the influence of methamphetamine | |

| PLAINTIFFS' ADDITIONAL FACTS | |
|---|---|
| Supporting Evidence:  Decl. of Ronald O'Halloran, M.D., para. 15; Decl. of Vicki Sarmiento, Exh. "A" – Depo. Townsley 49:13-15; Exh. "E" – Depo. Porter 39:3-5; 39:7-21; 45:3-14; 59:24 – 60:12; Exhs. "G"). | |
| 29.  The City ratified the conduct of the police officers by ignoring the findings of the D.A.'s forensic pathologist/neuro pathologist, Stephany Fiore, M.D. who concluded that "methamphetamine alone had little to do with this arrest given the amount present".  Dr. Fiori opined that other explanations for Mr. Motley's cardiopulmonary arrest may include a carotid sleeper hold; the weight of one or more individuals on Mr. Motley's back while he was in a prone position, particularly in conjunction with the effect of his head trauma; or the act of having Mr. Motley lying prone (hogtied or not), in an unconscious state. | |

| **PLAINTIFFS' ADDITIONAL FACTS** | |
|---|---|
| Supporting evidence: Decl. of Vicki Sarmiento, Exh. "F" – Stephany Fiore, M.D. Report p. 6. | |
| 30. The City of Redding and Chief Paoletti ratified the conduct of the defendant police officers because there was no retraining or adequate discipline of the police officers involved. This demonstrates systemic, organizational, and cultural patterns and practices which tacitly allow excessive and unnecessary force by the rank and file. The responsibility for this condition rests with the Redding Police Department chain of command and the Chief of Police.<br><br>Supporting Evidence: (Decl. of Roger Clark, para. 28). | |
| 31. Mr. Motley sustained multiple injuries at the hands of the defendant officers, including but not limited to, scalp laceration, multiple abrasions throughout his body, most notably on his forehead and midline, and left eyebrow | |

| PLAINTIFFS' ADDITIONAL FACTS | |
|---|---|
| region, scalp hematomas with small subdural hemorrhage, left zygomatic fracture, brain trauma, possible spleen injury, multiple fractures and injuries to face, upper extremities and lower extremities. During his hospitalization he developed rhabdomyolysis and multiple organs system failure from his injuries. A detailed description of his injuries, their cause, and cause of death are detailed in a medical report prepared by Dr. Stephany E. Fiore for the District Attorney's Office.<br><br>Supporting Evidence: Decl. of Vicki I. Sarmiento, Exh. "F" – Dr. Fiore Report; Exh. "G" – Autopsy Report. | |

DATED: March 16, 2017        **LAW OFFICES OF VICKI I. SARMIENTO**
                                        **LAW OFFICES OF DALE K. GALIPO**

                                        By:    */s/ Vicki I. Sarmiento*
                                          VICKI I. SARMIENTO
                                          Attorneys for Plaintiffs L.M., Carol Adams and S.M-B