EXHIBIT "B"



# ANDERSON DEPOSITION REPORTING
### Certified Shorthand Reporters

542 Union Street  
Red Bluff, California 96080

Ph: 530.527.7051  
Fax: 530.529.9543

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

L.M. by and through her Guardian ad
Litem ASHLEY MCCAIN, individually and
as successor in interest to the Estate
of STEVEN MOTLEY; CAROL ADAMS,
individually,
    Plaintiffs,

vs.    No. 2:14-cv-00767-MCE-AC
      (Consolidated Case No:
      2:14-cv-01736-TLN CMK)

CITY OF REDDING, CHIEF ROBERT F.
PAOLETTI, OFFICER JARED HEBERT, OFFICER
WES TOWNSLEY, OFFICER BRANDON LARGENT,
OFFICER BECKY ZUFALL, CORPORAL CHRIS JACOBY;
and DOES 1 through 10, inclusive,
    Defendants.
_____/
S.M-B, a minor, by and through his Guardian
ad Litem DAWN BIANCO, individually and
as successor in interest to the estate
of STEVEN MOTLEY,
    Plaintiffs,
vs.

CITY OF REDDING, a municipal corporation;
ROBERT F. PAOLETTI, JARED HEBERT,
WES TOWNSLEY, BRANDON LARGENT,
BECKY ZUFALL, CHRIS JACOBY; and
DOES 1 to 25 inclusive,
    Defendants.
_____/

DEPOSITION OF CHRIS JACOBY
Friday, June 24, 2016
Redding, California

SHEILA ANDERSON, C.S.R.    License No. 12778

CHRIS JACOBY                                    06/24/2016

1    Q    Okay. And you are trained that baton strikes
2 can break bones. Is that fair?
3    A    Correct.
4    Q    At any time, did you hear -- at any time during
5 the incident, did you see a weapon in Mr. Motley's
6 hands?
7    A    I don't recall.
8    Q    Did you ever see Mr. Motley attempting to grab
9 a specific weapon?
10   A    That, I don't recall.
11   Q    Did you ever hear Mr. Motley verbally threaten
12 to harm anybody?
13   A    No.
14   Q    Did you have any injuries from this incident?
15   A    No.
16   Q    Now, it's my understanding that you had prior
17 contact with Mr. Motley.
18   A    Yes.
19   Q    And had you arrested him before?
20   A    I know I participated in an arrest with him
21 before.
22   Q    Did you know at the time of this incident, the
23 specifics of his criminal background in terms of
24 specific convictions?
25   A    No.

13
ANDERSON DEPOSITION REPORTING, RED BLUFF, CA    (530)527-7051

1  Q    What is the -- oh.  Code 3.
2  A    Code 3.
3  Q    Someone told me that in the last deposition.  I
4  forgot.  Okay.
5       Which is essentially lights and sirens?
6  A    Correct.
7  Q    So at this point in time, Mr. Motley was at
8  least still responsive; correct?
9  A    The best I recall.
10 Q    But he had some apparent injuries?
11 A    Yes.
12 Q    Okay.  Would that be the reason why medical was
13 called for him within a minute or so of him being taken
14 into custody?
15 A    Based upon the nature of this altercation,
16 yeah.
17 Q    Okay.  So now, did Mr. Motley appear to
18 continue to struggle after he was handcuffed?
19 A    Yes.
20 Q    And was it necessary for officers to try to
21 restrain him after he was handcuffed and still
22 struggling?
23 A    Yes.
24 Q    And were multiple officers involved in that,
25 trying to restrain him after he was handcuffed?

1  A   Yes.

2  Q   And who did you observe being involved in
3  trying to restrain Mr. Motley after he was handcuffed?

4  A   My specific recollection is Officer Smyrnos,
5  who had arrived on scene, was attempting to control his
6  feet, via department-approved method, at which point,
7  that's what I recall.

8  Q   And yourself?

9  A   At that point, I was being -- no.

10 Q   How about Officer Largent?

11 A   My specific recollection was towards Officer
12 Smyrnos. I don't recall specifically what other
13 officers were doing at that point.

14 Q   Do you recall Officer Zufall being involved at
15 all after he was handcuffed?

16 A   I know she was still in the immediate area. I
17 do not have a specific recollection of what she was
18 doing.

19 Q   How about Officer Porter? Did you ever see
20 Officer Porter in physical contact, either before or
21 after the handcuffing?

22 A   After, I do not recall with her.

23 Q   How about before?

24 A   Before, I can specifically state no. I don't
25 remember seeing her at all.

1  Q   At any time, either before or after the
2  handcuffing, did you see Officer Porter on Mr. Motley's
3  back?
4  A   Not that I recall.
5  Q   Did you feel, yourself, that you needed to, in
6  any way, control or restrain Mr. Motley after he was
7  handcuffed?
8  A   No. I was given another task fairly quickly
9  after that.
10 Q   And what was the task?
11 A   To get what we refer to as our hobble
12 restraints.
13 Q   And who made the request?
14 A   I do not recall specifically.
15 Q   And was it another officer?
16 A   I believe so.
17 Q   I assume it was not Mr. Motley.
18 A   No. That's correct.
19 Q   Okay. And did you go somewhere -- did you have
20 a hobble on you at the time?
21 A   No.
22 Q   Did you go somewhere to get a hobble?
23 A   Yes.
24 Q   Where did you go?
25 A   Back to a patrol vehicle.

1     Q    Okay.  And did you go to your patrol vehicle or
2  another?
3     A    That, I don't recall.
4     Q    And where did you go essentially?  Back towards
5  the front of the house?
6     A    Correct.
7     Q    And did you find a hobble eventually?
8     A    I would have to review my statement for that
9  specific.  I don't recall right now.
10    Q    All right. Let's see if I can help you. Let
11 me ask you a few other questions.
12         You mentioned Officer Smyrnos.  I think that's
13 S-m-y-r-n-o-s.
14    A    Correct.
15    Q    Okay.  And you said you saw him doing some
16 department-approved technique with respect to the legs.
17    A    Correct.
18    Q    Is that when you cross the legs and push them
19 back towards the buttocks?
20    A    Correct.
21    Q    And did you see him doing that before you went
22 to get the hobble?
23    A    Yes.
24    Q    You eventually came back.
25    A    Correct.

1  Q    You're just saying right now you don't recall
2  if you had the hobble or not when you got back.
3  A    Correct.
4  Q    When you came back, did you see Officer Smyrnos
5  still in the cross position with the legs?
6  A    I would have to review. I don't recall right
7  now.
8  Q    Okay. That's fine. Let me point you to a
9  place that might help out. If you look at the page that
10 starts with line 161, the first couple of lines, why
11 don't you read them to yourself and see if that
12 refreshes your recollection as to whether when you came
13 back, you saw Officer Smyrnos still with the legs in the
14 cross position.
15 A    That helped. Thank you. I read that.
16 Q    Does that help refresh your recollection?
17 A    It does.
18 Q    Okay. And now that your recollection has been
19 refreshed, do you recall seeing Officer Smyrnos pushing
20 the legs towards the buttocks after you got back?
21 A    Yes.
22 Q    Okay. And did somebody say, as you were
23 observing Officer Smyrnos pushing the legs back, that --
24 words to the effect that Mr. Motley just went limp?
25 A    Yes.

1    Q    Do you remember trying to hold him in place
2  while he was thrashing?
3    A    No.  I believe we agreed that I had -- at that
4  point, had left to go get the hobbles.
5    Q    Before you went to get the hobble, was there
6  ever a time where you were trying to control his upper
7  body from thrashing around?
8    A    In which?  Prior to handcuffing or post
9  handcuffing?
10   Q    Either.
11   A    Well, essentially, yes.  In order to handcuff
12 him, you can't just control the arm.  You have to
13 control his torso too.
14   Q    And then once he was handcuffed, was he
15 continuing to thrash, in your terms, after he was
16 handcuffed?
17   A    The best I recall from my statement, I have
18 indicated he was.
19   Q    And do you know who was attempting to control
20 his upper body after he was handcuffed?
21   A    I don't have specific recollection of that now.
22   Q    When you got back from trying to get the
23 hobble -- and I understand you can't remember if you
24 actually got it or not -- who was in close proximity to
25 Mr. Motley?  You mentioned Smyrnos.  And do you recall

CERTIFICATE OF REPORTER

I, SHEILA ANDERSON, a Certified Shorthand Reporter of the State of California, License No. 12778, do hereby certify:

That prior to being examined, the witness

**CHRIS JACOBY,**

was sworn by me to testify the truth, the whole truth and nothing but the truth;

That said deposition was recorded in stenographic shorthand by me, a Certified Shorthand Reporter, at the time and place herein stated, and was thereafter reduced to typewriting under my direction, and that the deposition is a true record of the testimony given by the witness;

That I am not of counsel or attorney for any of the parties hereto, or in any way interested in the event of this cause, and that I am not related to any of the parties hereto.

WITNESS MY HAND this 2nd day of July, 2016.

_____
SHEILA ANDERSON, C.S.R.
License No. 12778