LAW OFFICES OF VICKI I. SARMIENTO
A Professional Corporation
VICKI I. SARMIENTO, SBN 134047
333 North Garfield Avenue
Alhambra, California 91801
Telephone: (626) 308-1171
Facsimile: (626) 308-1101

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

*Attorney for Plaintiffs L.M. by and through her Guardian Ad Litem AHSLEY MCCAIN, CAROL ADAMS, and S.M-B by and through his Guardian Ad Litem DAWN BIANCO*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.M. by and through her Guardian Ad Litem ASHELY MCCAIN, individually and as successor in interest to the Estate of STEVEN MOTLEY; CAROL ADAMS, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF REDDING, CHIEF ROBERT F. PAOLETTI, OFFICER JARED HEBERT, OFFICER WES TOWNSLEY, OFFICER BRANDON LARGENT, OFFICER BECKY ZUFALL, CORPORAL CHRIS JACOBY; and DOES 1-10, inclusive,<br><br>Defendants. | Lead Case No.: 2:14 CV-00767 MCE-AC<br><br>(Consolidated Case No.: 2:14 CV-01736-TLN-CMK)<br><br>**JOINT PRE-TRIAL CONFERENCE STATEMENT**<br><br><br>**PRE-TRIAL CONFERENCE**<br>**Date:** April 4, 2019<br>**Time:** 2:00 p.m.<br>**Crtrm.:** 7<br><br>(TRIAL DATE: May 20, 2019) |
| S.M-B, a minor, by and through his Guardian Ad Litem DAWN BIANCO, individually and as successor in interest to the estate of STEVEN MOTLEY,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF REDDING, a municipal corporation; ROBERT F. PAOLETTI, | |

1

JOINT PRE-TRIAL CONFERENCE STATEMENT        L.M., et al. vs. CITY OF REDDING, et al.

| | |
|---|---|
| JARED HEBERT, WES TOWNSLEY, BRANDON LARGENT, BECKY ZUFALL, CHRIS JACOBY; and DOES 1 to25, inclusive, | |
| Defendants. | |

Pursuant to the January 4, 2018 Third Amended Supplemental Pretrial Scheduling Order and E.D. Cal. Rule 281, Plaintiffs and Defendants jointly submit this Pre-Trial Conference Statement.

## 1. Jurisdiction and Venue:

Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1343, and 1367. Pursuant to 28 U.S.C. § 1391, venue is proper in the Eastern District of California as the events occurred within the district. Neither jurisdiction nor venue are contested.

## 2. Jury-Nonjury:

The parties request a jury trial.

## 3. Undisputed Facts:

A. At all relevant times, Defendants Wes Townsley, Brandon Largent, Chris Jacoby, Becky Zufall, Peggy Porter, and Chris Smyrnos were law enforcement officers (collectively, the "Defendant Officers") employed by the City of Redding and were acting within the course and scope of their employment and under color of law.

B. The events giving rise to this action occurred on October 5, 2013 in the 4600 block of Alta Saga Drive in the City of Redding.

C. Steven Motley died on October 8, 2013.

## 4. Disputed Factual Issues:

**Disputed Factual Issues Identified by Plaintiffs:**

1. Whether the Defendant Officers used excessive or unreasonable force against Steven Motley;

2. Whether the Defendant Officers were negligent in their interaction with

2

Steven Motley;

3. Whether the Defendant Officers acted with deliberate indifference during their encounter with Steven Motley;

4. Whether the actions or inactions of the Defendant Officers were a cause of injury or harm to Steven Motley;

5. Whether the actions or inactions of the Defendant Officers caused Steven Motley pre-death pain and suffering;

6. Whether the actions or inactions of the Defendant Officers were a cause of Steven Motley's death;

7. Whether the City of Redding has an unconstitutional custom or practice of failing to train its officers, including the Defendant Officers, in proper restraint methods; and,

8. Whether the City's failure to train, re-train, or discipline the Defendant Officers after the subject incident rises to the level of ratification of their actions by the City.

**Disputed Factual Issues Identified by Defendants:**

1. Whether decedent's actions prior to the first interaction with Wes Townsley, under the totality of the circumstances to that point, lead a reasonable officer to use the taser as a means of force on decedent.

2. Whether decedent's actions in breaking the taser wire or disengaging one of the probes, would lead a reasonable officer to attempt to subdue decedent by physical force.

3. Did decedent resist and become physically combative with Wes Townsley when Townsley attempted to subdue decedent, leading a reasonable officer to believe a carotid restraint was appropriate to the situation.

4. Was the carotid restraint applied appropriately to the training of the Redding police department and P.O.S.T. guidelines.

5. After decedent revived from the use of the carotid restraint, did he again become resistant and combative as Officers Largent and Jacoby arrived.

6. Did the application of baton strikes by Officers Largent and Jacoby target the arms of decedent.

7. Was the targeting of the arms of decedent consistent to the training of the Redding police department and P.O.S.T. guidelines as a means of controlling a resistive and combative suspect.

8. Under the totality of the circumstances would a reasonable police officer use baton strikes on the arms of decedent at the time Officers Largent and Jacoby acted.

9. Did the baton strikes of Officers Zufall and Porter target the legs of decedent.

10. Was the targeting of the legs by Officers Zufall and Porter consistent to the training of the Redding police department and P.O.S.T. guidelines as a means of controlling a resistive and combative suspect.

11. Under the totality of the circumstances known to Officers Zufall and Porter, would a reasonable police officer apply baton strikes to the legs of decedent at the time Officers Zufall and Porter acted.

12. Was the use of a figure four restraint of the legs of decedent by Officer Smyrnos as trained by the Redding police department and P.O.S.T. guidelines.

13. Under the totality of the circumstances known to Officer Smyrnos, would a reasonable police officer apply a figure four restraint to decedent at the time and in the manner that officer Smyrnos acted.

14. Were the Redding police officers trained on the issue of risk of positional asphyxia under P.O.S.T. guidelines by the Redding police department.

15. Did the training provided by the Redding police department meet the standards and guidelines of P.O.S.T.

4

16. If the training of the Redding police department was deficient in the risks posed by positional asphyxia, has the City ratified the actions of the death by failing to train, retrain or discipline officers involved.

17. When and to what extent the officers at the scene recognized a need for medical help for the decedent, their actions to provide medical help and calling for medical assistance.

**5. <u>Disputed Evidentiary Factual Issues:</u>**

**<u>Evidentiary Issues Identified by Plaintiff</u>:**

The following issues will be raised in motions in limine.

1. Exclude decedent's criminal history, drug use, tattoos, any suggestion that decedent was in a gang.
2. Exclude contents of decedent's backpack, knife, sheath, drug paraphernalia, contents of truck.
3. Exclude reference to patrol car rifle or other weapons inside.
4. Exclude findings and conclusions of D.A., I.A., other agency investigations that officers' use of force was within policy, not criminal, or justified, chose not to file charges.

**<u>Evidentiary Issues Identified by Defendants</u>:**

The following issues will be raised in motions in limine.

1. Limitation on the testimony of Roger Clark to police practices, and barring any testimony or opinions by Mr. Clark to medical issues under Daubert. Instruction ordering Mr. Clark to answer questions posed; and instruction barring use of hyperbole and inflammatory metaphors and adjectives. The motion may move for additional limitations after completion of the review of his deposition.

2. Barring testimony of nondisclosed experts under Rule 26, cumulative testimony, and publishing of opinions of non-disclosed experts. Dr. Stephany Fiore may be proffered as a second opinion to the pathology of death. This is

5

cumulative to the plaintiffs retained expert Dr. O'Halloran. Mr. Ed Obayashi, a police practices expert, was retained by the Shasta County district attorney to assist in the criminal investigation. It is anticipated that the plaintiffs retained pathologist and police practices experts will attempt to publish opinions given to the district attorney in support of their opinions in this litigation. Mr. Obayashi was not disclosed as an expert. Plaintiffs have also disclosed 12 medical personnel to discuss the injuries of decedent. They are cumulative.

      3. Permitting Use of Evidence of Decedent's Criminal Convictions (and arrests, detentions, etc.) for state of mind of the officers, and/or for Impeachment purposes, use of criminal history for damages.

      4. Preventing Introduction of Prior Citizen Complaints, Including Those Mentioned in Complaint (Deen v. City of Redding; Barron v. City of Redding).

      6. A Stipulated Protective Order was entered into by the parties in discovery. The parties have identified exhibits for trial, but are still in the process of meeting an and conferring on admissibility and reserving objections under possible FRE 403.

      7. Barring Introduction of Photographs of Decedent Autopsy under FRE 403 absent a foundation.

**6. Additional Information re Wrongful Death Action:**

  A. This lawsuit arises out of the death of Steven Motley which Plaintiffs contend was caused by the excessive force of the Defendant Officers, who were all integral participants to the incident and/or failed to intervene. The incident occurred on October 5, 2013 in the City of Redding. Plaintiffs assert federal and state claims and seek survival and wrongful death damages as permitted by law.

  B. Decedent Steven Motley was 33 years old at the time of the incident.

  C. Decedent's mother Carol Motley (formerly Carol Adams) is presently fifty-eight years old. Decedent's children L.M. and S.M.B. are both eight years old.

**7. Relief Sought:**

Plaintiffs' operative complaint seeks compensatory damages, including both survival damages and wrongful death damages under federal and state law; medical expenses; funeral and burial expenses; punitive damages against the individual defendants; costs; and reasonable attorneys' fees as to all federal claims.

With respect to survival damages, Plaintiffs contend that Decedent's children are entitled to recover damages for Decedent's pain and suffering prior to and up to the time of his death, loss of Decedent's life, and loss of Decedent's enjoyment of life. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014).

**8. Points of Law:**

**Plaintiffs' Points of Law:**

**8(a). First Claim: 4th Amendment – Excessive Force**

Claims for excessive force are analyzed under the Fourth Amendment's prohibition against unreasonable searches and seizures using the framework articulated in *Graham v. Conner*, 490 U.S. 386 (1989). Police officers may only use such force that is objectively reasonable under the circumstances, viewing the facts from the perspective of a reasonably trained officer on the scene. *Id*. at 396. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Ibid*.

Courts must first look at the nature of the intrusion based on the type and amount of force inflicted. *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994). They must assess the gravity of the particular intrusion on Fourth Amendment interests. *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). Then they must consider the importance of the governmental interests at stake. *Id*. Finally, the courts must "balance the gravity of the intrusion against the government's need for that

7

intrusion to determine whether it was constitutionally reasonable. To do so, they apply the *Graham* factors by looking at the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Deorle v. Rutherford*, 272 F.3d 1272, 1279-80 (9th Cir. 2001). Ultimately, the most important *Graham* factor is whether the suspect posed an "immediate threat to the safety of the officers or others." *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc).

### 8(b). Second Claim: 4th Amendment – Denial of Medical Care

In *Tatum v. City & of County of San Francisco*, 441 F.3d 1090, 1098 (9th Cir. 2006), the Court held that post-*Graham*[1] claims of denial of medical care are to be analyzed under the Fourth Amendment; *see also Garvey v. Gibbons*, 2008 WL 4500011, at *11 (C.D. Cal. Oct. 5, 2008) (noting that "…the officers' duty to obtain medical treatment for an arrestee arises under the Fourth Amendment."). Here, Plaintiffs contend that it was not objectively reasonable for Defendants to delay the rendering of medical aid to Decedent after substantial force, including deadly force, had been used against him.

### 8(c). Third Claim: 14th Amendment – Interf. w/ Familial Relationship

Plaintiffs contend that the use of excessive deadly force, including deadly force, against Decedent Steven Motley violated Plaintiffs' Fourteenth Amendment substantive due process rights to their familial relationship, companionship, and society with their father and adult son. *Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir.1986); *Smith v. City of Fontana*, 818 F.2d 1411, 1420 (9th Cir. 1987) overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999).

---

[1] Graham v. Connor, 490 U.S. 386

8

JOINT PRE-TRIAL CONFERENCE STATEMENT            L.M., et al. vs. CITY OF REDDING, et al.

Whether Plaintiffs must prove that the Defendant Officers acted with "deliberate indifference" or with a "purpose to harm unrelated to a legitimate law enforcement objective" depends on whether the Defendant Officers had time to deliberate. *See Porter v. Osborn,* 546 F. 3d 1131 (9th Cir. 2008). Here, the "deliberate indifference" standard is the correct standard to apply given that deliberation was practicable. This is not a case of split-second decision because the encounter between Mr. Motley and the Defendant Officers lasted several minutes.

### 8(d). Fourth Claim: Municipal Liability:

#### 1. Failure to Train

A municipality's failure to train its employees may create §1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). Additionally, "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton* at 390; see also *Cloutheir v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010).

Generally, in order to prove the deliberate indifference under circumstances like those present here, plaintiffs must demonstrate "a pattern of similar constitutional violations by untrained employees." *Connick*, 532 U.S. at 62 (citing *Board of the County Comm'rs. V. Brown*, 520 U.S. 392, 409 (1997)). The Supreme Court nonetheless has recognized that even a "single incident" of indifference can, if egregious enough, substitute for the pattern of violations ordinarily necessary to establish municipal liability." *Connick* at 63. The Court further explained that the "single incident" theory represents the Supreme Court's refusal to "foreclose upon

the possibility" that when a failure to train is so patently obvious, a single constitutional violation will suffice to give rise to municipal liability under §1983. *Id.* at 64. A violation under such circumstances must be a "highly predictable consequence" of a failure to train. *Id.* at 63. By way of example, "the Court theorized that a city's decision not to train officers about constitutional limits in the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights. *Id.* (quoting *Board of the County*, 520 U.S. at 409).

In addition, Plaintiffs need not present facts showing that similar conduct has repeatedly occurred in the past to show an unconstitutional act was taken pursuant to a municipal "policy." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.11 (1986). "[A] single instance of unconstitutional action by a non-policymaking employee of the [County] . . ." would be sufficient to impute liability to the [County], if "the unconstitutional act was taken pursuant to a municipal policy." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-24 (1985)). Where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants then can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under section 1983. *City of Canton Ohio v.* Harris, 489 U.S. 378, 389 (1989). See also, *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) [an inadequate training program is evidence of policy where the inadequacy amounts to deliberate indifference to the rights of persons with whom the police regularly come into contact]. "[T]he need to train officers in the constitutional limitations of the use of force is 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." *McKenzie v. Milpitas*, 738 F. Supp. 1293, 1301 (N.D. Cal. 1990), citing *Tennessee v. Garner*, 471 U.S. 1 (1985). Where a failure to train reflects a "deliberate" or "conscious" choice by the municipality the failure will be properly thought of as an actionable city policy.

*Canton,* supra, at 379. In addition, the identified deficiency in training must be closely related to the ultimate injury. *Id.*

### 2. **Ratification**

"A policy or custom may be found . . . in the failure of an official 'to take any remedial steps after the violation.'" *Gomez v. Vernon*, 255 F.3d 1118, 1126-27 (9th Cir. 2001), citing *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). The issue of whether ratification occurred in this case is a question for the jury. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *see McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (custom inferred from failure to reprimand or discharge). The City's failure to discipline officers involved in the incident ratified the deputies' unconstitutional acts and is evidence of approval of the officer's actions. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1088) (plurality); *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *Larez v. Los Angeles*, 946 F.2d 630 (9th Cir. 1991). While a failure to discipline, by itself, is usually insufficient to establish municipal liability, when, as here, it is combined with the fact that the deputies' conduct was so outrageous that a reasonable administrator should have known that he or she should do something about it, a policy can be inferred from the City's failure to reprimand or discharge any deputy in connection with the constitutional violation. *See Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) (the court held there was sufficient evidence to support a jury finding that the chief of police ratified the excessive use of force against the plaintiffs when he unquestioningly accepted the findings of an investigation that had been conducted by the agency responsible for the alleged constitutional violation, despite the fact that said investigation contained gaps and inconsistencies); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985).

The issue of whether ratification occurred in this case is a question for the jury if sufficient facts have been established. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *Fuller v. City of Oakland,* 47 F.3d 1522, 1534 (9th Cir. 1995).

11

JOINT PRE-TRIAL CONFERENCE STATEMENT          L.M., et al. vs. CITY OF REDDING, et al.

### 8(e). Fifth Claim: Wrongful Death/Survival based on Battery

Plaintiffs' operative complaint contains a wrongful death claim. Plaintiffs contend that the basis for their wrongful death claim is battery and negligence.

A California state law claim for battery arising out allegations of excessive force is analyzed under the same standard of objective reasonableness used in Fourth Amendment claims. With respect to Defendant City of Redding, Plaintiffs add that the City is vicariously liable for the wrongful death of their decedent under the state law claims. *See* CA. Govt. Code §§815.2(a); 820(a).

### 8(f). Sixth Claim: Wrongful Death/Survival based on Negligence

Plaintiffs contend that the tactics employed by the Defendants in trying to get Mr. Motley into custody, are part of the totality of the circumstances and constitute pre-use of force negligence. In *Hayes v. County of San Diego*, 57 Cal.4th 622, 629 (Cal.2013), the Court held that peace officers have a duty to act reasonably when using deadly force and reaffirmed "the long-established principle of California negligence law that the reasonableness of a peace officer's conduct must be determined in light of the totality of the circumstances." Since "preshooting conduct is included in the totality of the circumstances surrounding an officer's use of deadly force, therefore the officer's duty to act reasonably when using deadly force extends to preshooting conduct."); *Grudt v. City of Los Angeles*, Cal.3d 575, 587 (1970); *Munoz v. Olin*, 24 Cal.3d 629, 634 (1979).

### Defendants' Points of Law:

### 8(a). First Claim: 4th Amendment – Excessive Force

The defendants acted appropriately under the Graham Standard of the 9th Cir. model jury instruction 9.25.

### 8(b). Second Claim: 4th Amendment – Denial of Medical Care

Defendants assert that medical care was rendered in an objectively reasonable and time manner as set forth.

**8(c). Third Claim: 14th Amendment – Interf. w/ Familial Relationship**

Defendants contend that the issue is a "purpose to harm" standard because the core of the claim by plaintiffs is that the force used after he was subdued caused asphyxia. The use of the taser, carotid, baton strikes and figure four occurred in each instant, as a decision made in the heat of the battle with plaintiff, and stopped when he stopped resisting. Only after he stopped resisting and was under control did the officers realize he was in medical distress and took action. J.I. 9.25 speaks to tense, rapidly evolving situations that require split second decision making. That the total occurrence lasted several minutes is not the applicable standard.

**8(d). Fourth Claim: Municipal Liability**

The defendants agree this is a question for the jury.

**8(f). Seventh Claim: Wrongful Death based on Negligence**

The applicable standard is set forth in CACI 440. The defendants contend the facts support a proper tactics was employed.

**9. Abandoned Issues:**

Dismissal of defendant Paoletti after motion for summary adjudication. Dismissal of Hebert.

**10. Witnesses:**

Defendants' Witness List is attached hereto as Exhibit 1.

Plaintiffs' Witness List is attached hereto as Exhibit 2.

**11. Exhibits:**

Defendants' Exhibit List is attached hereto as Exhibit 3.

Plaintiffs' Exhibit List is attached hereto as Exhibit 4.

**12. Discovery Documents:**

Refer to the Parties' exhibit lists.

**13. Further Discovery or Motions:**

The deposition of Defendants' police practices expert Jeff Martin is

outstanding. The contemplated motions are motions in limine.

14. **Stipulations:**

The parties stipulate that the Defendant Officers were acting under color of law and were acting in the course and scope of their employment with the City of Redding at the time of the incident.

Counsel intend to work together to stipulate to the authenticity of certain, autopsy photos and scene photos.

15. **Amendments—Dismissals:**

None at this time.

16. **Settlement Negotiations:**

The parties participated in a settlement conference before Magistrate Judge Allison Claire on March 3, 2016. A second settlement conference was held before Magistrate Judge Edmund F. Brennan on April 12, 2018. The parties have discussed a possible return to a settlement conference after the completion of the expert depositions. The parties will be prepared to discuss the issue with the court at the pretrial conference if not resolved by then.

17. **Agreed Statements:**

The parties do not seek presentation of evidence by an agreed statement.

18. **Separate Trial of Issues:**

None.

19. **Impartial Experts—Limitation of Experts:**

The parties do not request appointment of an impartial expert.

20. **Attorney Fees:**

If Plaintiffs prevail on any one of the federal claims, they will seek attorneys' fees under 42 U.S.C. § 1988 and pursuant to a regularly noticed motion.

21. **Trial Exhibits:**

The parties do not request the special handling of trial exhibits and agree that

each party will maintain trial exhibits pending appeal if requested by the Court.

22. **Trial Protective Order:**

Plaintiffs do not seek a trial protective order. Defendants may seek a trial protective order pending rulings on defendants' motions in limine regarding discovery material produced under Judge Claire's protective order that plaintiffs may attempt to use in trial.

23. **Miscellaneous:**

Pursuant to the January 4, 2018 Third Amended Supplemental Pretrial Scheduling Order, the parties provide the following in addition to the required Rule 281 subjects:

   A. **Prior Motions Tendered and Resolution**

Defendants filed a Motion for Summary Judgement as to Plaintiffs' *Monell* claims against the City and claim against Chief Paoletti. The motion was denied as to the City and granted as to Chief Paoletti.

   B. **Joint Statement of the Case**

This is a civil rights case involving the death of Steven Motley. The Plaintiffs are Carol Motley, decedent's mother and Lily (L.M.) and Steven (S.B.M.), his two children. Plaintiffs allege that Defendant Officers Wes Townsley, Chris Jacoby, Branden Largent, Rebecca Zufall, Peggy Porter, and Chris Smyrnos used excessive and unreasonable force against Steven Motley and were negligent in their interactions with him, and that Defendant City of Redding failed to properly train the officers. Plaintiffs allege that the Defendants' conduct was a cause of Mr. Motley's pre-death pain and suffering and also a cause of his death. Plaintiffs seek damages as permitted by law.

The Defendants City of Redding and the individual Officers contend that the use of force was reasonable and necessary under the circumstances and deny any wrongful conduct toward Mr. Motley.

### C. Number of Jurors to be Impaneled

Plaintiffs propose eight. Defendants propose nine. This shall be discussed at the pre-trial conference.

DATED: March 7, 2019  **LAW OFFICES OF VICKI I. SARMIENTO**
**LAW OFFICES OF DALE K. GALIPO**

By: */s/ Vicki I. Sarmiento*
    VICKI I. SARMIENTO
    Attorney for Plaintiffs

DATED: March 7, 2019  **ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP**

By: */s/ Dale Allen*
    DALE ALLEN
    Attorneys for Defendants City of Redding, Robert F. Paoletti, Peggy Porter, Chris Smyrnos and Becky Zufall

DATED: March 7, 2019  **GOYETTE & ASSOCIATES**

By: */s/ Gary G. Goyette*
    GARY G. GOYETTE
    Attorneys for Defendants Wes Townsley, Brandon Largent and Chris Jacoby