DALE L. ALLEN, JR., State Bar No. 145279
dallen@aghwlaw.com
ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 697-2000
Facsimile: (415) 813-2045

Attorneys for Defendants
CITY OF REDDING, PEGGY PORTER, CHRIS SMYRNOS, AND BECKY ZUFALL

Gary G. Goyette, Esq. – SBN 244715
Rachel E. Simons, Esq. – SBN 322804
Goyette & Associates, Inc.
A Professional Law Corporation
2366 Gold Meadow Way, Suite 200
Gold River, CA 95670
Telephone: (916) 851-1900
Facsimile: (916) 851-1995
Email: goyetteg@goyette-assoc.com
           rachel@goyette-assoc.com

Attorneys for Defendants WES TOWNSLEY, BRANDON LARGENT, and CHRIS JACOBY

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## REDDING COURTHOUSE

| | |
|---|---|
| L.M. by and through her Guardian Ad Litem ASHLEY MCCAIN, individually and as successor in interest to the Estate of STEVEN MOTLEY; CAROL ADAMS, individually,<br><br>                    Plaintiffs,<br>     v.<br><br>CITY OF REDDING, CHIEF ROBERT F. PAOLETTI, OFFICER JARED HEBERT, OFFICER WES TOWNSLEY, OFFICER BRANDON LARGENT OFFICER BECKY ZUFALL, CORPORAL CHRIS JACOBY; and DOES 1-10, inclusive,<br><br>                    Defendants.<br> | Case No. 2:14-CV-00767-MCE-AC<br>Consolidated Case No.: 2:14-CV-01736-MCE-AC<br><br>**TRIAL BRIEF**<br><br>Hon. Morrison C. England, Jr.<br><br>Date: May 20, 2019<br>Time: 9:00<br>Ctrm: 7<br><br>Trial: May 20, 2019 |
| S.M-B, a minor, by and through his Guardian Ad Litem DAWN BLANCO, individually and as successor in interest to the estate of STEVEN MOTLEY, | |

|   |   |
|---|---|
| 1 | Plaintiff, |
| 2 | v. |
| 3 | CITY OF REDDING, a municipal corporation; ROBERT F. PAOLETTI, JARED HEBERT, WES TOWNSLEY, BRANDON LARGENT, BECKY ZUFALL, CHRIS JACOBY; and DOES 1-25, inclusive, |
| 6 | Defendants. |

## I. FACTS

Plaintiffs are the mother of decedent and the children of decedent, Steven Motley. Mr. Motley died in the custody of the defendants in this suit. Mr. Motley, a very fit, 6'4", and 242 lb. man died after he had ingested methamphetamine and alcohol, was then in a car chase with officers, crashed his truck through a cement retraining wall, was tasered and broke the connections in his efforts to escape on foot, and stole a police car. He was then chased again, bailed on the police car and in another foot chase, caught, tased again, broke the wires, and then engaged in a fight with one officer who finally was able to use a carotid restraint to render decedent unconscious and disarm him from a large knife he was carrying, though not brandishing. Before the exhausted officer could cuff decedent and ensure he was not armed with any other weapons, decedent revived and again started fighting to get away from the one officer as back up officers arrived. He resisted the handcuffing despite numerous and repeated warnings to stop resisting, as four officers applied baton blows to both arms and his legs, as he kept his hands tucked under his waist and kicked with his feet. In the span about 2 minutes he was finally controlled, cuffed and legs secured. An ambulance was called because of the use of the taser and batons, per department policy. While the ambulance was en route, and approximately a minute and a half after he was fully restrained, decedent went into cardiac arrest. The ambulance was upgraded to Code 3, and efforts to help plaintiff started. He died 3 days later.

## II. ADMISSIONS AND STIPULATIONS NOT CITED IN PRETRIAL ORDER

The pretrial order has not yet been issued. The joint pretrial statement contains those evidentiary issues that are resolved by stipulation.

## III. LEGAL ARGUMENT

Defendant will show at trial that the use of force against Decedent was objectively reasonable. Assuming, *arguendo*, the jury finds liability on use-of-force, qualified immunity will be before the Court. In establishing that the use of force was reasonable, the Monell allegations will fail.

### A. Objective Reasonableness Standard

As set forth in the joint pretrial statement, the Graham standard on use of force is encapsulated in the Model Jury instruction 9.25. The facts of the case make it clear that officers were dealing with a serious crime in the actions of plaintiff to flee officers and repeatedly put the lives of innocent bystanders in mortal danger by his driving. He went so far as to steal a police car and continue to drive recklessly, evidence of his resistance. On being cornered twice, he broke the connections of the taser probes to continue his efforts to resist arrest, which on multiple levels is evidence of the officers' efforts to deescalate, use alternate means and recognizing the altered state of the man supports a person acting on meth and alcohol making him a threat to the lives of the officers and others.

When Officer Townsley finally went hands on, he found the decedent armed with a knife. A reasonable police officer finding a deadly weapon on a fit and large man fighting relentlessly is going to take all precautions to ensure the person isn't armed with other weapons, and use all means of training to control the person, short of lethal force from his or her gun. Here the officers went from taser, to carotid, to batons, solely with the intent to subdue decedent, all in accordance with their training and experience. By using a baton and physical effort after a taser is less intrusive than a bean bag shotgun or lethal force, in an effort to control decedent and put him in handcuffs. The fact that the defendants were able to subdue decedent in approximately 2 minutes supports this event transpired in a rapidly evolving situation. This evidence will show the officers acted in accordance with the law under Graham.

### B. Qualified Immunity

At trial, resolving the *Core Disputed Facts* (see Joint Pre-Trial Statement) in favor of Defendant entitles Defendant to qualified immunity. "Qualified immunity attaches when an

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

293616.1

official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (*per curiam*) (internal quotes omitted). Reasonableness is determined based on the landscape of the law at the time of the subject occurrence. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*). "[P]olice officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018) (internal quotes in the original) (citing to *Mullinex v. Luna*, 136 S.Ct. 305, 308 (2015) (*per curiam*). "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Ibid.*, internal quotes and citations omitted.

Defendant notes, "[e]ven if officer acts contrary to her training … that does not itself negate qualified immunity where it would otherwise be warranted." *Sheehan v. City and County of San Francisco*, 135 S.Ct. 1765, 1777 (2015). In other words, the Plaintiff here "cannot avoi[d] summary judgment by simply producing an expert's report that the officers' conduct leading up to a deadly confrontation was imprudent, inappropriate or even reckless. [citations]" *Ibid.*

Here, at the time of this incident, clearly established federal law did not prohibit a reasonable officer who confronts a subject who has committed a number of crimes that put the public at jeopardy in two chases, fighting officers, bearing a knife from using baton strikes and physical force by five officers to subdue and restrain decedent using the training taught under the auspices of California P.O.S.T. in the time that it took the officers.

It is the contention of the defendants that the purpose to harm standard, under the 14th amendment, applies to the facts of this case. If appropriate, Defendant will make a Rule 50(a) motion on this issue based on the authorities of *Porter v. Osborn*, 546 F.3d 1131, 1140-1141 (9th Cir. 2008); *County of Sacramento v. Lewis*, 523 U.S. 833 (1998); and, their progeny.

### C. **Special Verdict Form**

Here, the jury must resolve certain factual disputes between the parties in order for the Court to determine whether Defendants are entitled to qualified immunity. To this end, Defendant

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

293616.1

proposes Special Interrogatories to the jury. The Interrogatories will answer the key factual disputes, namely: (1) whether Decedent posed a threat when fleeing the police in a reckless and dangerous manner to the public; (2) whether Decedent's active resistance to twice break the contact of the taser probes further established a propensity of danger to the officers by his ability to withstand the pain inflicted by the taser; 3) that the methamphetamine intoxication recognized by the officers supported a state of mind to the use of baton strikes to subdue decedent; 4) finding a knife on decedent and then decedent fighting against the officers efforts to pull his hands out from under him, supported the officers fearing for the lives decedent might be holding another weapon under him necessitating under their training the baton strikes and physicality to subdue decedent; 5) and whether, under the totality of the circumstances, the information and circumstances known to the Defendants led them to objectively and reasonably believe that the forced needed was reasonable to subdue this fit, large mentally altered by drugs man, who would not give up to the police while being repeatedly ordered to do so. The [proposed] Special Verdict Form will contain these and possibly other suggested Interrogatories as the evidence unfolds.

### D. Evidentiary Issues

Defendant's Motion in Limine are pending the Court's order.

## III. CONCLUSION

Defendant respectfully submits this trial brief.

Respectfully submitted,

Dated: March 7, 2019
          ALLEN, GLAESSNER,
          HAZELWOOD & WERTH, LLP

          By: _/s/ Dale L. Allen, Jr._
          DALE L. ALLEN, JR.
          Attorneys for Defendants
          CITY OF REDDING, PEGGY PORTER,
          CHRIS SMYRNOS, AND BECKY ZUFALL