LAW OFFICES OF VICKI I. SARMIENTO
Vicki I. Sarmiento, Esq. (Bar No. 134047)
vsarmiento@vis-law.com
333 North Garfield Avenue
Alhambra, California 91801
Telephone:   (626) 308-1171
Facsimile:    (626) 308-1101

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California  91367
Telephone:   (818) 347-3333
Facsimile:    (818) 347-4118

Attorneys for Plaintiffs L.M., CAROL ADAMS, S.M-B.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.M. by and through her guardian ad litem ASHLEY MCCAIN, individually and as successor in interest to the Estate of STEVEN MOTLEY; CAROL ADAMS, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF REDDING, CHIEF ROBERT F. PAOLETTI, OFFICER JARED HEBERT, OFFICER WES TOWNSLEY, OFFICER BRANDON LARGENT, OFFICER BECKY ZUFALL, CORPORAL CHRIS JACOBY and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. 2:14-CV-00767 (MCE AC)<br><br>(Consol. Case No. 2:14-cv-01736 TLN CMK)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE OPINIONS BY PLAINTIFFS' EXPERT ROGER CLARK**<br><br>Date: April 4, 2019<br>Time: 2:00 p.m.<br>Courtroom: 7<br>(Hon. Morrison C. England, Jr.) |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants seek by way of Motion in Limine No. 1 to exclude certain opinions of Plaintiffs' police practices expert Roger Clark. Specifically, Defendants seek to exclude Mr. Clark from testifying as to what Defendants characterize as "[m]edical opinions; [o]pinions based on the science of physics; [h]is assessment of the credibility of witnesses; [o]pinions based on speculation and conjecture; and [t]he opinions of Edward Obayashi. Plaintiffs oppose Defendants' motion in its entirety on the basis that Defendants have mischaracterized Mr. Clark's relevant and admissible testimony regarding police procedure, tactics, and training in an attempt to exclude opinions that are unfavorable to Defendants.

## II. STANDARD

The admissibility of expert witness testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's ruling in *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 594-95 (1993). Under Rule 702 and *Daubert*, the Court serves as the gatekeeper to the admission of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145 (1999). In *Daubert*, the Court stated that in analyzing whether scientific expert testimony was admissible, such testimony must be both relevant (helpful to the jury) and reliable. 509 U.S. at 589, 591-92. However, "an expert is permitted wide latitude to offer opinions, including those not based on firsthand knowledge or observation." *Id.* at. 592. Thus, expert testimony is admissible if (1) the expert is qualified to testify competently; (2) the expert has used sufficiently reliable methodology in reaching a conclusion; and (3) the testimony will assist the trier of fact. *Toole v. Baxter Healthcare Corp.*, 325 F.3d 1307, 1312 (11th Cir. 2000).

"Expert testimony on police practices and the use of force has generally been found to be admissible in cases involving allegations of police misconduct." *Lopez*

1 | *v. Chula Vista Police Dept.*, 2010 WL 685014, at *1 (S.D. Cal. Feb. 28, 2010);
2 | *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) ("Discussing whether the
3 | officers' conduct comported with law enforcement standards, the expert relied upon
4 | California's Peace Officer Standards and Training . . . . A rational jury could rely
5 | upon such evidence in assessing whether the officers' use of force was
6 | unreasonable."); *Larez v. City of Los Angeles*, 946 F.2d 630, 635 (9th Cir. 1991)
7 | (finding that testimony of "an expert on proper police procedures and policies" was
8 | relevant and admissible); *Davis v. Mason County*, 927 F.2d 1473, 1484-85 (9th Cir.
9 | 1991) (testimony of plaintiffs' police practices expert that officers violated law
10 | enforcement standards properly received). Expert testimony concerning an ultimate
11 | issue such as the reasonableness of a police officer's use of force is not improper.
12 | *See Muhktar v. Cal. State Univ., Hayward*, 200 F.3d 1053, 1065 n.10 (9th Cir.
13 | 2002). In fact, Rule 704 explicitly allows expert witnesses to express an opinion on
14 | an ultimate issue to be decided by the jury. *Id.*

## III. ARGUMENT

Roger Clark is a twenty-seven year veteran of the Los Angeles County Sheriff's Department (LASD). Before retiring, his career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and fifteen years as a Lieutenant. Mr. Clark holds a California Officer Standards and Training (POST) Advanced Certificate and is a graduate of the POST Command College. Mr. Clark has also testified in numerous civil rights cases as a police practice expert and numerous courts have found Mr. Clark to be a reliable authority on police practices and procedures. *See Blankenhorn v. City of Orange, et al.,* 485 F.3d 463, 485 (9th Cir. 2007) (Mr. Clark's expert report was quoted approvingly by the United States Court of Appeals for the Ninth Circuit as an expert in Police Administration, Discipline and Use of Force, wherein the court noted that Mr. Clark is "a former sergeant and lieutenant with twenty-seven years of experience in the Los Angeles County Sheriff's

Department."); *Lopez v. Chula Vista Police Dep't*, 2010 WL 685014, at *5 ("Based upon Clark's report and the submissions of the parties, the Court concludes that Clark's opinions are sufficiently relevant and reliable to meet the standard of Rule 702. Clark's reliance upon the POST standards is not a basis for the exclusion of his testimony."); *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1177 (N.D. Cal. 2009) (finding that the testimony of Roger Clark, "that Officer Cardoza's use of the carotid hold was unreasonable and excessive under the circumstances," "supported the conclusion that the use of this force under these circumstances was unreasonable and excessive"); *Verdekel v. County of Los Angeles*, 2009 WL 4058592 (C.D. Cal. May 7, 2009) (denying defendants' motion *in limine* to exclude "improper opinion testimony" of Roger Clark).

### A. Mr. Clark is Qualified to Offer Opinions on Police Training Pertaining to Positional Asphyxia and Carotid Hold

Contrary to Defendants' assertions, Mr. Clark does not offer any "medical opinion" about any improper police tactic by defendant officers and Mr. Motley's injuries. Instead, Mr. Clark specifically testified that he would only offer opinions on "[t]he training—the general training given to officers regarding the occurrences [of positional asphyxia] and precautions" as well as what officers are trained on in applying a carotid restraint and "the danger when it's not applied correctly." Defendants fail to point to any testimony in Mr. Clark's deposition in which he opines that certain actions by defendant officers caused a certain injury to Mr. Motley.

Mr. Clark was retained as an expert in police procedure, tactics, and training and in doing so, must comment on the training police officers receive on the use of force, restraint, and the use and application of a carotid restraint hold, including the knowledge of any potential side effects and risks of injury or death. Mr. Clark is not opining on medical issues but rather on what a reasonable officer with adequate

-3-
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 1

training in defendant officers' position should have known and would have been able to assess given the circumstances. While not a federal case, the California Court of Appeal opinion in *B.B. v. County of Los Angeles*, App. Case No. B264946 (July 10, 2018) cited Mr. Clark's opinion as a police practices expert and based on his knowledge of the training deputies receive "to avoid positions that could restrict chest and diaphragm movements necessary for breathing." Specifically, the Court cited Mr. Clark's testimony that the officer's "use of force was unreasonable" and his testimony about the danger and unreasonableness of putting significant weight on an arrestee's back who is evidently drug intoxicated and therefore at greater risk of becoming "oxygen-starved."

### B. Mr. Clark is Qualified to Offer Opinions Regarding the Force that Caused Officer Jacoby's Baton to Break Based on His Training and Experience

Defendants once again mischaracterize the nature of Mr. Clark's opinion; here, regarding the amount of force used by Officer Jacoby that caused his baton to break. Mr. Clark does not offer an opinion on the physics needed for a police baton to break. Rather, Mr. Clark has opined that, based on his training and twenty-seven years of experience as a police officer, it would require a lot of force to break a baton because a baton is "designed to stay intact when you use it for hitting somebody." This is not a matter of common knowledge. Mr. Clark's testimony would help the jury understand that breaking a baton while striking the body of a detainee or arrestee is not consistent with officer training because proper use would not cause breakage. Moreover, the fact that Jacoby's baton broke while he was striking Mr. Motley's body goes to the totality of the circumstances reviewed by Mr. Clark in analyzing the use of force in this case.

///

///

### C. Mr. Clark is Qualified to Offer Opinions Regarding Carotid Restraint Holds and Chokeholds

Defendants request that the Court preclude Mr. Clark from testifying that in his opinion, Officer Townsley applied a chokehold rather than a carotid restraint hold on Mr. Motley under the guise that Mr. Clark is opining on the credibility of Officer Townsley. However, nowhere in Mr. Clark's report or testimony does he ever make a credibility determination of Officer Townsley. As an experienced law enforcement officer, Mr. Clark possesses the knowledge and training to be able to distinguish a carotid restraint hold from a chokehold. Mr. Clark opined that based on his review of the objective facts of Mr. Motley's struggle after Officer Townsley applied force to Mr. Motley's neck, it appeared Officer Townsley used a chokehold on Mr. Motley instead of a carotid restraint hold. As Mr. Clark testified, a carotid restraint hold compresses the blood vessels and nerves that run along the side of the neck, which causes the subject to go unconscious and his body to go flaccid. Since Mr. Motley continued to struggle after Officer Townsley applied force to his neck and thereafter became rigid, Mr. Motley's actions are consistent with someone being held in a chokehold, which, according to Mr. Clark's training and experience in law enforcement, causes the subject to struggle due to the restriction of airflow to the lungs. This is not a credibility attack on Officer Townsley, rather an objective opinion based on a review of the objective facts of the struggle.

### D. Mr. Clark is Qualified to Offer Opinions Regarding Mr. Motley's Movements in Self-Defense

Mr. Clark has not offered any opinions based on conjecture or speculation. As Mr. Clark testified to in his deposition, based on Mr. Motley's movements as described by the officers and percipient witnesses and Mr. Clark's training and experience in law enforcement, Mr. Motley's movements are *consistent* with attempts to defend himself with physical movement. Mr. Clark does not definitively state that Mr. Motley was trying to defend himself against the officers' use of force

but instead opines that Mr. Motley's movements are consistent with someone attempting to defend or protect himself.

### E. Mr. Clark Can Testify as to His Opinions on Police Tactics Expert Edward Obayashi's Expert Report

Mr. Clark does not represent that he relied on Edward Obayashi's report in forming any of his opinions in this case. However, if Defendants open the door and ask him questions about Edward Obayashi's report, as a police practice expert, Mr. Clark should be able to testify on whether he agrees or disagrees with the opinions contained in Mr. Obayashi's report.

### F. There is No Evidence Mr. Clark Intends to Offer Gratuitous or Inflammatory Metaphors in His Testimony

Defendants fail to point to any examples of Mr. Clark's supposed "gratuitous and inflammatory metaphors" or any examples in which Mr. Clark failed to directly respond to a question posed. If Mr. Clark does offer any metaphors in response to a question at trial, the Court will be better situated at that time to assess the admissibility of such opinions. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (Unless specific evidence is shown to be excludable on all potential grounds, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.").

///
///
///

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order denying Defendants' motion in its entirety.

Dated: March 21, 2019

LAW OFFICES OF VICKI I. SARMIENTO
LAW OFFICES OF DALE K. GALIPO


By _____ */s/ Vicki I. Sarmiento* _____
   Vicki I. Sarmiento
   Attorneys for Plaintiffs