LAW OFFICES OF VICKI I. SARMIENTO
Vicki I. Sarmiento, Esq. (Bar No. 134047)
vsarmiento@vis-law.com
333 North Garfield Avenue
Alhambra, California 91801
Telephone:  (626) 308-1171
Facsimile:   (626) 308-1101

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California  91367
Telephone:  (818) 347-3333
Facsimile:   (818) 347-4118

Attorneys for Plaintiffs L.M., CAROL ADAMS, S.M-B.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.M. by and through her guardian ad litem ASHLEY MCCAIN, individually and as successor in interest to the Estate of STEVEN MOTLEY; CAROL ADAMS, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF REDDING, CHIEF ROBERT F. PAOLETTI, OFFICER JARED HEBERT, OFFICER WES TOWNSLEY, OFFICER BRANDON LARGENT, OFFICER BECKY ZUFALL, CORPORAL CHRIS JACOBY and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. 2:14-CV-00767 (MCE AC)<br><br>(Consol. Case No. 2:14-cv-01736 TLN CMK)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO PRECLUDE PLAINTIFFS' EXPERT RONALD O'HALLORAN FROM OPINING THAT THE MANNER OF DEATH WAS A "HOMICIDE"**<br><br>Date:  April 4, 2019<br>Time: 2:00 p.m.<br>Courtroom:  7<br> (Hon. Morrison C. England, Jr.) |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Court should deny Defendants' Motion *in Limine* No. 2 to preclude Plaintiffs' forensic expert Ronald O'Halloran, M.D. from using the legal term "homicide" during his testimony at the trial of this matter. Dr. O'Halloran is an expert in anatomic and forensic pathology, who has worked full-time as a forensic pathologist and medical examiner for the past thirty-one years. Not only does Dr. O'Halloran possess the requisite medical training, knowledge, and experience in medical causation to certify cause and manner of death generally, including that the manner of death should be classified as "homicide," but Dr. O'Halloran has specialized knowledge and experience opining as to cause of death associated with in-custody restraint. Dr. O'Halloran has extensively researched the topic of deaths involving in-custody restraint, conducted autopsies in such cases, and published peer-reviewed scientific papers on the topic. Based on Dr. O'Halloran's specialized knowledge and expertise, as well as his review of the relevant evidence, he is able to identify the probable manner of death—which, in this case, he opines would more appropriately be classified as "homicide." This proffered testimony is based on verified, objective evidence, and it will assist the jury determine the facts at issue.

In their perfunctory Motion *in Limine* No. 2, Defendants argue that Dr. O'Halloran's testimony - that the manner of the death of Steven Motley should be classified as "homicide" - is more prejudicial than probative under Federal Rules of Evidence Rule 403. Plaintiffs disagree and submit that expert testimony regarding the cause and manner of Mr. Motley's death has a high probative value. In this case, the Plaintiffs allege that Mr. Motley died as a result of excessive force inflicted on him October 5, 2013, when he was tased, severely beaten with batons, and asphyxiated by the six individually named defendant officers of the Redding Police Department ("RPD"). Plaintiffs anticipate that Defendants will dispute the cause

and manner of death. Plaintiffs further anticipate that Defendants may call the medical examiner to testify that Mr. Motley's manner of death was classified as "accident."[1] Accordingly, Dr. O'Halloran's medical expert testimony bears on the key issues in this case, and this Court should permit Dr. O'Halloran to opine that, based on his expert analysis, the manner of death was "homicide" from a medical classification. Dr. O'Halloran does not purport to testify as to whether Mr. Motley's death fits the legal—as opposed to medical—classification of "homicide."

## II. ARGUMENT

In their Motion *in Limine* No. 2, Defendants ask this Court to preclude Dr. O'Halloran from using the legal term "homicide" during his testimony. Defendants do not dispute that Dr. O'Halloran should be permitted to testify that the actions of the individual defendant officers caused Mr. Motley's death; rather, Defendants only take issue with Dr. O'Halloran's testimony regarding the manner of Mr. Motley's death. What Defendants fail to acknowledge, however, is that rather than employing the term "homicide" as a legal classification, Dr. O'Halloran will use the term "homicide" purely as a medical classification. Dr. O'Halloran does not purport to be a legal expert, nor does Dr. O'Halloran intend to testify as to whether Mr. Motley's death satisfies the *legal* test for "homicide." As set forth above, Dr. O'Halloran is an experienced forensic pathologist who possesses the requisite medical training, knowledge, and experience in medical causation to certify the cause and manner of Mr. Motley's death. Indeed, classifying the manner of death from a medical standpoint is one of the duties of a forensic pathologist. Plaintiffs anticipate that the cause and manner of Mr. Motley's death will be a key issue at trial. Accordingly, it is Plaintiffs who would be prejudiced under Federal Rules of Evidence Rule 403 if Plaintiffs' medical expert were precluded from testifying that

---

[1] Decedent's death certificate lists manner of death as "pending investigation – accident".

his opinion is that Mr. Motley's death would more appropriately be classified as "homicide."

In this case, Dr. O'Halloran's opinion that the manner of Mr. Motley's death would more appropriately be classified as "homicide" is appropriate and should be admitted at trial. Dr. O'Halloran does not offer this opinion for its legal purposes; rather, he is merely fulfilling his duties as a pathologist, which include specifying the manner of death. *See*, *e.g.*, *U.S. v. Gray*, 2010 WL 3515599, at *5 (N.D. Ohio Sept. 3, 2010) (finding that, because a coroner's duties include classifying manner of death, expert could testify that the manner of death was "homicide"); *Giannetti v. City of Stillwater*, 2006 WL 5100544, at *7 (W.D. Okla. Jan. 26, 2006) ("The two expert witnesses are qualified to express an opinion about the classification of death from a medical examiner's vantage point. Characterization of the death as homicide 'logically . . . only means that [Ms. Giannetti's death] resulted from some human force. . . .'") (citing *Manocchio v. Moran*, 919 F.2d 770, 783 n. 21 (1st Cir. 1990)); Robert Hendrix, *Investigation of Violent and Sudden Death: A Manual for Medical Examiners* vii (1972) ["Medicolegal investigation should yield the cause of death (i.e. the diagnosis as usually understood by physicians) and, if due to violence, the manner of death (i.e. homicide, suicide or accident.)"].

Moreover, because Defendants do not dispute that Mr. Motley was tased and beaten by the defendant officers and do not dispute that Dr. O'Halloran can testify that the actions of the defendant officers caused Mr. Motley's death, the risk for undue prejudice to Defendants is minimal at best. The First Circuit addressed this issue in *Manocchio v. Moran* when it determined that admission of the medical examiner's conclusion that the manner of death was "homicide" at trial was not an error. 919 F.2d at 783-84. The *Manocchio* court stated:

> In a different case, this question might be a difficult one. If, for example, decedent had fallen from a window, and the question was whether he was pushed out or had fallen accidentally, a medical examiner's finding

> of "homicide" would likely be inadmissible. Such a finding could be highly prejudicial, since it would contradict defendant's claim of accident, and would almost certainly have to be based on a police report or similar extrinsic evidence. . . . Here, however, there is no such difficulty. There is no dispute that decedent was beaten. Defendant's theory is not that decedent's multiple injuries were caused by some accidental cause, such as a fall, but rather that the multiple injuries the victim sustained were not the true cause of his death. Instead, defendant speculates-although without offering any expert evidence in support-that the victim died as a result of drug ingestion or, possibly, a spontaneous hemorrhage. This is a purely medical argument, and, as we have held, medical opinions as to cause of death may be constitutionally presented in an autopsy report just as they may be presented in a hospital record. Defendant could refute the examiner's opinion as to cause of death by presenting the opinions of his own experts.

*Id*. at 783. The *Manocchio* court ultimately concluded that "permitting the medical examiner's finding of 'homicide" to reach the jury' was not an error. *Id*. at 784. "The finding simply reflected the examiners opinion that injuries received in an unquestioned beating—rather than some other medical cause—had caused death." *Id*. Likewise, in the present case, Dr. O'Halloran's medical opinion that the manner of Mr. Motley's death was "homicide" simply reflects that the injuries inflicted upon Mr. Motley by the defendant officers caused his death. Therefore, this Court should rule that Dr. O'Halloran's testimony that the cause of death was "homicide" is admissible. Rather than limiting Dr. O'Halloran's testimony, Defendants' best recourse in this case would be to vigorously cross-examine Dr. O'Halloran and/or to call their own medical expert or the medical examiner who conducted Mr. Motley's autopsy.

///
///
///
///
///

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion *In Limine* No. 2 in its entirety.

Dated: March 21, 2019

LAW OFFICES OF VICKI I. SARMIENTO
LAW OFFICES OF DALE K. GALIPO

By  */s/ Vicki I. Sarmiento*
Vicki I. Sarmiento
Attorneys for Plaintiffs